IN RE ESTATE OF LUCILE E. KIRSCHSTEIN.
E. D. COLEMAN v. MABELLE A. KIRSCHSTEIN.[1]

June 19, 1942.

No. 33,165.

*Durham & Swanson,* for appellant.
*O'Brien & Kronebusch,* for respondent.

[1]Reported in 4 N. W. (2d) 633.

2

HOLT, JUSTICE.

Appeal from a judgment in favor of defendant. The record consists of the pleadings in the district court, framed on appeal from the probate court, the findings of fact and conclusions of law, and the judgment.

As appears from the pleadings and findings, the facts are in substance these: Appellant lived in Maywood, Illinois, in 1939. Lucile, the daughter of respondent, was killed in a collision of the automobile in which she was riding with another car, in the city of Chicago, on January 21, 1939, due to the negligence of the owner and driver of the car in which she was riding. The owner, the brother of appellant, carried liability insurance. On February 28, 1939, respondent was appointed administratrix of the daughter's estate by the probate court of Hennepin county, and on September 21, 1939, collected $1,750 from the insurance carrier of the owner for Lucile's death by his wrongful act. Respondent filed her final account as administratrix with petition for distribution therein, reciting in the petition that "all expenses of administration, funeral expenses and taxes have been paid." The account was allowed October 23, 1939, and decree of distribution made.

Paragraph 4 of appellant's complaint sets forth the origin of his claim:

"4. That said respondent immediately went to Chicago after being apprised of her daughter's death and upon arrival in Chicago contacted appellant, and informed him that she did not have sufficient funds with her to make the necessary arrangements for preparing her daughter's body and having it transported to Minneapolis. That thereafter appellant and said respondent selected a casket and arranged for the preparation and transportation of said body and at the special instance and request of said respondent and with her full knowledge and consent appellant paid to the Paul W. Senne Funeral Home, Inc., the sum of $495.53 for the casket and preparation of the body and advanced to respondent

cash in the sum of $45.00, and incurred the sum of $60.35 in accompanying said body to Minneapolis."

The answer denied this paragraph, but the court found:

"That on the 21st and 22nd days of January, 1939, Mabelle A. Kirschstein, mother of the said deceased, immediately went to Chicago to attend the affairs of her daughter and to look after the burial of said daughter following her death and while the said Mabelle A. Kirschstein was at that time at Chicago she had certain conversations with the appellant, E. D. Coleman, pursuant to which the appellant, E. D. Coleman, advanced to Mabelle A. Kirschstein, mother of the deceased, various sums of money totalling $600.88 which money was used for the purpose of providing a casket and other expense incident to the preparation of the body for burial and its shipment to Minneapolis, Minnesota, and burial."

Then the court found that said money was so advanced by appellant prior to respondent's appointment as administratrix of her daughter's estate, and that of the $600.88, $495.53 was for the casket and preparation of the body for burial and $60.35 for expense of accompanying the body to Minneapolis for burial.

The memorandum attached to the decision, but not made a part thereof, indicates the ground for the conclusions of law denying appellant any relief. It reads:

"The undisputed testimony in this case shows that at the time when the money that is the subject matter of this controversy was advanced to Mrs. Kirschstein she had not been appointed administratrix of the estate of her daughter, and there is no evidence to show that either of the parties had any reason to suppose that she would ever be appointed such administratrix. The only conclusion that can be drawn from the evidence is that the money was advanced to her as a personal loan. If this be correct, the plaintiff [appellant] has no valid claim for reimbursement against the estate of the deceased daughter."

In this conclusion we think the court erred.

Mason St. 1927, § 9657, provides that the damages for wrongful death "shall be for the exclusive benefit of the surviving spouse and next of kin, to be distributed to them in the same proportion as personal property of persons dying intestate; but funeral expenses and any demand for the support of the decedent, duly allowed by the probate court, shall first be deducted and paid." This imposes upon the court the duty to determine the reasonable funeral expenses to be first deducted out of the recovery of the $1,750 collected by respondent for the wrongful death of Lucile. It is clear from the admissions of the pleadings referred to and the findings of fact that the funeral expenses had not been paid.

By the common law, funeral expenses are a charge against the representative, and, under our statute, "they are also a direct charge against the estate and may be presented and allowed as such. The creditor has alternative remedies." Dunnell, Probate Law, § 906; Dampier v. St. Paul Trust Co. 46 Minn. 526, 49 N. W. 286; Prescott v. Swanson, 197 Minn. 325, 267 N. W. 251. On the admissions in the pleadings and findings of fact quoted and summarized, appellant had a good claim against the money in this estate. He was not given the opportunity to file it in the probate court, though he made a timely request therefor. There is no contention in the pleadings or findings that the amounts of $495.53 for the casket and preparation of the body and $60.35 for the transportation of the body to the place of burial were not reasonable. The $45 respondent received for her personal use appellant may not recover herein.

The judgment is reversed with direction to enter judgment for appellant for $555.88 with interest from January 21, 1939, and costs.

HILTON, JUSTICE (dissenting).

Only by ignoring the controlling and incontestable facts upon which decision must rest does the opinion of the court have plausibility. Because no evidence has been returned to us as part of the

record, we are obliged to accept as conclusive the findings of fact made by the district court upon appeal from the probate court. None of these findings adopts the allegations contained in paragraph 4 of appellant's pleadings. The matter therein contained was emphatically denied by respondent. Consequently, this court ought not to use it in any manner to support the decision.

Briefly summarized, the findings of fact are as follows: That on February 28, 1939, respondent was appointed administratrix of the estate of Lucile Kirschstein, who died on January 21, 1939, in Chicago, as a result of injuries sustained in an automobile accident in which appellant's brother was involved as driver; that at that time respondent went to Chicago to make arrangements for the burial of her daughter; that while there she "had certain conversations with the appellant, E. D. Coleman, pursuant to which the appellant, E. D. Coleman, *advanced to Mabelle A. Kirschstein, mother of the deceased,* various sums of money totalling $600.88, which money was used for the purpose of providing a casket and other expense incident to the preparation of the body for burial and its shipment to Minneapolis, Minnesota, and burial"; that such sums were advanced to respondent prior to the petition for, or appointment of, respondent as administratrix. [Italics supplied.]

Plainly, these findings circumscribe the factual basis upon which the opinion in this case must rest. We are privileged to question only the trial court's conclusions of law upon these facts. These conclusions denied to appellant any claim in the probate court. So that there could be no doubt about what it used as a basis for its decision, the trial court by memorandum stated: "The only conclusion that can be drawn from the evidence is that the money was advanced to her [respondent] as a personal loan." Therefore, in passing upon appellant's contention that he has alternative remedies, one against respondent personally and one against the estate, we must adopt this finding or abdicate our appellate duty. The opinion should not be obscured by any so-called "admissions"

in the pleadings. There are none that at all affect the factual basis upon which the case must rest.

In this posture of the case, adherence to the mandate of § 9657 is not drawn in question. Of course funeral expenses are a preferred claim upon any recovery for wrongful death. See Prescott v. Swanson, 197 Minn. 325, 339, 267 N. W. 251. So far as the probate court was concerned, such expenses had been paid in this case. Since he had been paid, the undertaker was not attempting to recover for his services. *Cf.* Dampier v. St. Paul Trust Co. 46 Minn. 526, 49 N. W. 286; Barrett v. Heim, 152 Minn. 147, 188 N. W. 207; Kelly v. Snow, 168 Minn. 298, 210 N. W. 105. Admittedly, the undertaker had been paid with money which originally belonged to appellant. But unless we deny the realism of the situation, we cannot treat appellant as the unpaid supplier of funeral services. Nor does he occupy the position of a relative or friend who, on account of the urgency of the situation, acts upon behalf of the decedent in making the arrangements for and paying the expenses of the burial. Of course, such person is entitled to reimbursement for his expenditures. McNally v. Weld, 30 Minn. 209, 14 N. W. 895; see Kelly v. Snow, 168 Minn. 298, 299, 210 N. W. 105. But that is not this case. It was respondent who reacted to the urgency of the situation. As stated in a prior case where the third party loaned money for funeral expenses to the wife of a decedent: "In the first instance they [the expenses] were advanced and paid, at her request, by Patrick Garvey [appellant here] on her promise to repay him, * * * She [respondent] was the responsible party who effected the payment and settlement of these charges." McNally v. Weld, 30 Minn. 209, 213, 14 N. W. 895, 896. The fact that in that case the third party had been paid before the wife sought reimbursement is of no consequence in considering the legal situation occupied by respondent here. The finding of fact was that appellant *advanced to Mabelle A. Kirschstein, mother of the deceased,* various sums of money" as a "personal loan," at a time when, in the words of the trial judge, there was "no evidence to show that either of the

parties had any reason to suppose that she would ever be appointed such administratrix." Consequently, she occupied the exact position of the wife in the McNally case and is in no different position than a borrower at a loan agency desiring to secure money to bury a relative. What motives appellant had in advancing this money to respondent we do not know. Upon this record, and so far as I am concerned, he is in no respect entitled to treatment over and above that which any lender would have. Can it possibly be the law that a bank or loan agency which loans money, used for burial purposes, to a relative upon his personal credit has a valid claim in the probate court as additional security for repayment of the loan? Such a rule goes far beyond anything that was recognized by the common law. The cases cited by the court do not even suggest such a rule, to say nothing of applying it. None of the cases which have come to my attention give it sanction. Indeed, the only case in Minnesota which at all treats of the problem relegates appellant to the role of lender, and respondent to the role of purchaser of funeral services. McNally v. Weld, *supra*.

The court's quotation from the recital contained in respondent's final account is incomplete and misleading. It stated that "all expenses of administration, funeral expenses and taxes have been paid by Mabelle A. Kirschstein *out of her personal funds* and no claim has been made against the estate for same." Under the facts as we are permitted to view them, this recital was entirely accurate and truthful. Being the only one who could file a claim for reimbursement, and having received the money from appellant as a "personal loan," she was clearly within her rights in representing to the court that she had paid the expenses and sought to assert no claim for the same.

What makes the decision of the court more curious is its implicit recognition of the soundness of the rule here advocated. The court has said: "The $45 respondent received for her *personal use* appellant may not recover herein." The court thus classifies part of the money received from appellant as personal and inferen-

tially earmarks the rest as nonpersonal. Yet the only connection which appellant had with the death or burial of decedent was through his brother, who was the driver upon that fatal occasion. It was highly personal to respondent, not appellant, that her daughter be prepared for burial. Apparently the court is altering the implications arising out of a normal debtor-creditor relationship because of the purpose for which the money was used. The rule thus announced must surely mean that wherever money can be traced through a personal transaction to a funeral, then the personal creditor, as additional security, can fix his hands upon the assets of the estate. Such never was and, it is respectfully submitted, never should be the rule of the common law.

Reference by the court to the fact that appellant "was not given the opportunity to file it [*i. e.,* a claim] in the probate court, though he made a timely request therefor," is not helpful to decision upon the merits. The court below rested its decision, not upon the question of good cause for opening the decree of distribution so as to permit appellant to file a claim, but upon the sole ground that appellant had no claim which could be asserted. The quoted matter raises an issue which is not in the case.

I believe the judgment should be affirmed.

PETERSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Hilton.